UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| ELROY G. NEWTON, | ) |
|       Plaintiff, | ) ) ) |
| v. | )   Case No. 4:22-CV-239 AGF ) |
| COMPASS HEALTH NETWORK, et al., | ) ) |
|       Defendants. | ) |

**MEMORANDUM AND ORDER**

Self-represented plaintiff Elroy G. Newton brings this civil action against the Compass Health Network, Kevin Schmidt DDS, Lisa Barnes, Jane Does 1 and 2 and Unknown Office Supervisor. Before the Court are plaintiff's motions for leave to proceed *in forma pauperis* and to appoint counsel. Having reviewed the motion to proceed without prepayment of the required filing fees and costs and the financial information submitted in support, the Court will grant the motion and waive the filing fee in this matter. *See* 28 U.S.C. § 1915(a)(1). However, after reviewing the complaint, the Court finds that it lacks subject-matter jurisdiction over this matter. As such, the Court will require plaintiff to show cause why this action should not be dismissed for lack of jurisdiction. *See* Fed.R.Civ.P.12(h)(3).

**Plaintiff's Complaint**

Plaintiff filed the instant civil action on February 25, 2022. He claims that he is bringing this action pursuant to the following federal laws: "Title 18 U.S.C. § 242 – Deprivation of Rights Under Color of Law;" Title 18 U.S.C. § 241 – "Conspiracy Against Rights;" Title 18 U.S.C. § 245 "Federally Protected Activities;"– Title 18 U.S.C. § 248 "Freedom of Access to Clinic Entrances;" Federal Trade Commission Act; Section 5: Unfair or Deceptive Acts or Practice, Fraud, Extortion, Breach of Fiduciary Duty.

Plaintiff, a resident of St. Charles, Missouri, brings this action alleging violations of his civil rights against the following defendants: Compass Health Network; Dentist Kevin Schmidt; Lisa Barnes; Jane Does 1-2 and Unknown Office Supervisor.

In his "Statement of Claim," plaintiff alleges a dispute with Wentzville Dental, a dental office he was referred to by Compass Health.[1] Plaintiff purports that in mid-December 2019, he called Wentzville Dental to make an appointment to see the dentist, Dr. Schmidt, because he had two teeth causing him pain. He claims he spoke to a receptionist at the dentist office who called herself Amber, who made the appointment for him to see the dentist after his doctor appointment at 8:00 a.m. on February 18, 2020. However, when he arrived at the dentist, he was told that he did not have an appointment on file. He asked "where Amber" was, and the receptionist at the office told him that she worked at a different office, but even if she had scheduled his appointment on February 18, 2020, the receptionist would have seen it in her computer. Plaintiff's appointment was rescheduled by the receptionist for February 26, 2020.

Plaintiff states that when he arrived at Wentzville Dental to check in for his appointment on February 26, 2020, he was checked in by the same receptionist from February 18, 2020. The dental assistant did plaintiff's initial assessment, and then plaintiff saw Dr. Schmidt, who suggested removal of his top and bottom teeth and replacement of them with dentures. Plaintiff states that he asked for removal of the top teeth only, and the dentist told him that the cost would be $27.00 for the extractions and $950.00 for the dentures. Plaintiff was told by the dental assistant on February 26, 2020, that at that time of service he would be obligated to pay for a portion of the cost, $450.00. Plaintiff claims he scheduled the extractions for March 3, 2020, as well as a follow-up for the dentures on March 17, 2020, at 8:00 a.m.

---

[1]Compass Health Network describes themselves as "a nonprofit health care organization that provides a full continuum of behavioral health services as well as primary and dental health services throughout Missouri." *See* https://compasshealthnetwork.org/services.

Plaintiff asserts that when he arrived at Wentzville Dental on March 3, 2020, at 12:15 p.m., he checked in and sat in the waiting room. A few minutes later, the receptionist called plaintiff to the window and purportedly told him that there was an outstanding bill of $4.00 from plaintiff's prior medical visits. Plaintiff claims that she asked him whether he wanted to pay the balance. Plaintiff explained that he did not have an extra $4.00 that day. She said, "OK," and plaintiff returned to his seat.

Plaintiff alleges that a few moments later, the receptionist again called him to the window. She purportedly asked whether he had the $27.00 for his extraction cost that day. Plaintiff states that he said yes and sat back down. He claims that the receptionist again called him to the window and said that if he failed to pay the $4.00 amount, he could not see the dentist that day. Plaintiff does not include his response; however, he claims that that the receptionist said she would have to talk with her supervisor. Although the dental assistant came to get plaintiff and took him to the dental chair, plaintiff asserts that the dental assistant asked him for the extra $4.00 after taking his blood pressure. Plaintiff alleges that at this point, the receptionist who had initially turned him away from receiving an appointment on February 18, 2020, came into the dental room and told him he needed to pay the $4.00 prior to receiving dental services.

Plaintiff claims he told the two individuals that he had a payment plan relating to the $4.00 worked out with the medical department. The dental assistant suggested maybe the dental office could provide partial service at the visit; however, the receptionist told plaintiff that she had previously told him at his prior visit that if he failed to pay the $4.00, he would not be provided service. The dental assistant apparently then told plaintiff that she had overheard the receptionist state this to plaintiff at his prior visit. Plaintiff told both women that they were lying. The receptionist then told plaintiff he would not be seen today. Plaintiff left the dental office and went to the medical department.

Plaintiff claims he explained what had occurred to the secretary in the medical department. He allegedly told the secretary that he would like to make payment arrangements so he could receive some help with his teeth. Plaintiff asserts that the secretary began making payment arrangements when she stopped and stated, "I forgot, we only make payment arrangements for people who owe more than fifty dollars." She then told plaintiff she would call someone to override the situation. Plaintiff states that someone showed up to "work out the situation internally." This person purportedly found out the debt was from 2017-2018 and stated that she wanted plaintiff to receive the dental service. Plaintiff states that he was in the medical department not more than 15 minutes before the issue was worked out.

Plaintiff then went back to the dental office to reschedule his appointment. The receptionist told plaintiff that the only appointment he could make would be to take out two teeth at a time. As this was a different kind of appointment than he had been offered previously, plaintiff requested the same kind of appointment that would cut the cost to $27.00. The receptionist insisted that such an appointment did not exist. Plaintiff finally agreed to the appointment type offered by the receptionist. However, he wanted to make all the appointments necessary while he was at the office on that date. The receptionist told plaintiff she could only make one appointment at a time without checking with her supervisor or a dentist.

Plaintiff has attached to his complaint a document titled, "Compass Health Network Title VI Complaint Form." Plaintiff states in his complaint document as follows: "I felt discrimination from the 3 main people I came in contact with and these people are listed as the two receptionist[s] the dental assistant and their supervisor which would make 4."

For relief, plaintiff seeks monetary damages.

**Discussion**

Plaintiff appears to be complaining about the type of service he received from Compass Health Network and one of its dental offices, Wentzville Dental. He has provided to the Court one of the "inserts" from Compass Health Network's website, noting the "caring approach" advertised by Compass Health. However, plaintiff states he did not receive such an approach. As noted above, he has named as defendants in this action: Compass Health Network; Dentist Kevin Schmidt; Nurse Lisa Barnes; Jane Does 1-2 and Unknown Office Supervisor.

"In every federal case the court must be satisfied that it has jurisdiction before it turns to the merits of other legal arguments." *Carlson v. Arrowhead Concrete Works, Inc.*, 445 F.3d 1046, 1050 (8th Cir. 2006). The Court has the duty to determine its jurisdiction and raise the issue of subject matter jurisdiction *sua sponte*, if necessary. *See City of Kansas City, Mo. v. Yarco Co., Inc.*, 625 F.3d 1038, 1040 (8th Cir. 2010). The Court must dismiss any action over which it determines that it lacks subject matter jurisdiction. Fed. R. Civ. P. 12(h)(3).

Federal courts are courts of limited jurisdiction. This Court has jurisdiction to hear cases involving the Constitution, laws, or treaties of the United States under 28 U.S.C. § 1331, and cases where diversity jurisdiction exists under 28 U.S.C. § 1332. If this Court lacks both diversity of citizenship and federal question jurisdiction, the case is subject to dismissal for lack of jurisdiction. *See Auto-Owners Ins. Co. v. Tribal Ct. of Spirit Lake Indian Rsrv.*, 495 F.3d 1017, 1020-24 (8th Cir. 2007) (finding that subject matter jurisdiction is lacking where there is neither diversity of citizenship nor federal question jurisdiction).

Plaintiff's complaint fails to establish this Court's jurisdiction under either basis. The Court has diversity jurisdiction under 28 U.S.C. § 1332 over cases where the citizenship of each plaintiff is different from the citizenship of each defendant, and where the amount in controversy is more than $75,000. *Ryan ex rel. Ryan v. Schneider Nat. Carriers, Inc.*, 263 F.3d 816, 819 (8th Cir. 2001).

Diversity jurisdiction does not exist here because plaintiff and defendants are all alleged to be citizens of the State of Missouri.

Federal question jurisdiction under 28 U.S.C. § 1331 gives district courts original jurisdiction over civil actions arising under the Constitution, laws, or treaties of the United States. *Griffioen v. Cedar Rapids & Iowa City Ry. Co.*, 785 F.3d 1182, 1188 (8th Cir. 2015). Whether a claim arises under federal law is determined by reference to the "well-pleaded complaint." *Great Lakes Gas Transmission Ltd. P'ship v. Essar Steel Minn. LLC*, 843 F.3d 325, 329 (8th Cir. 2016) (internal citations omitted). The well-pleaded complaint rule provides that jurisdiction exists only when a federal question is presented on the face of a plaintiff's properly pleaded complaint. *Id.*

Plaintiff asserts that he is bringing this action pursuant to four different civil rights statutes. The first three statutes, 18 U.S.C. § 242, "Deprivation of Rights Under Color of Law," 18 U.S.C. § 241 – "Conspiracy Against Rights" and 18 U.S.C. § 245 "Federally Protected Activities" cannot provide plaintiff a bases for jurisdiction. Even if plaintiff had properly alleged defendants had violated these statutes, the statutes he relies on are criminal in nature and do not give him a private right of action. *See U.S. v. Wadena*, 152 F.3d 831, 846 (8th Cir 1998) ("Courts have repeatedly held that there is no private right of action under [18 U.S.C.] § 241, even though the statute allows federal authorities to pursue criminal charges"); *Cok v. Cosentino*, 876 F.2d 1, 2 (1st Cir. 1989) (stating that only a United States prosecutor can bring a complaint under 18 U.S.C. §§ 241- 242, and that the "statutes do not give rise to a civil action for damages"); *Storm-Eggink v. Gottfried*, 409 Fed. Appx. 426, 427 (2nd Cir. 2011) (stating that "nothing in the language or structure of [18 U.S.C.] § 241 suggests that Congress intended to create a private right of action"); *Robinson v. Overseas Military Sales Corp.,* 21 F.3d 502, 511 (2nd Cir. 1994) (stating that 18 U.S.C. § 242 is a criminal statute that does not provide a private right of action); *Davis v. Norwood*, 614 Fed. Appx. 602, 605 (3rd Cir. 2015) (stating "that 18 U.S.C. § 242, which criminalizes the deprivation of rights

under color of law, does not provide a private right of action"); *Brown v. Express Scripts,* 2018 WL 1295482, at *2 (E.D. Mo. 2018) (dismissing plaintiff's claim brought under 18 U.S.C. § 242 because plaintiff had no private right of action); *Roberson v. Pearson*, 2012 WL 4128303, at *1 (D. Minn. 2012) (stating that 18 U.S.C. § 245 is a federal criminal statute "that cannot provide the basis for any private cause of action"); *Banks-Bey v. Acxiom,* 2010 WL 395221, at *3 (N.D. Ohio) (dismissing claim under 18 U.S.C. § 245 because § 245 is a criminal statute for which there is no private right of action); *Wolf v. Jefferson Cty., Mo.,* 2016 WL 233247, at *2 (E.D. Mo. 2016).

Similarly, plaintiff may not base his case for federal jurisdiction in this matter on claims brought pursuant to the Federal Trade Commission Act, as there is no private right of action under the FTC. *Holloway v. Bristol-Myers Corp.,* 485 F.2d 986, 988–89 (D.C. Cir. 1973). Plaintiff also cannot state a claim under 18 U.S.C. § 248 "Freedom of Access to Clinic Entrances (FACE)" because the statute prohibits persons from intimidating or interfering with someone obtaining or providing reproductive health services, which does not apply in this instance as plaintiff was attempting to obtain dental services. *See U.S. v. Dinwiddie*, 76 F.3d 913 (8th Cir. 1996).

To the extent plaintiff is asserting a basis for federal question jurisdiction under the listed "violations" in his complaint, he has not established that his claims arise under: "the False Claims Act[2]," Title VII of the Civil Rights Act of 1964[3]," "the Emergency Medical Treatment and Labor

---

[2]The False Claims Act punishes those who attempt to defraud the federal government. 31 U.S.C. § 3729. It authorizes private individuals to bring civil actions in the government's name, and such actions are referred to as qui tam actions.  In a *qui tam* action, the private individuals actually "sue on behalf of the government as agents of the government, which is always the real party in interest." *United States ex. rel. Rodgers v. State of Ark.,* 154 F.3d 865, 868 (8th Cir. 1998). Plaintiff has not alleged that defendants attempted to defraud the government.

[3]The purpose of Title VII is to ensure a workplace environment free of discrimination *Ricci v. DeStefano*, 557 U.S. 557, 580 (2009).  Because plaintiff was not employed by Compass, he cannot bring a claim under Title VII.

Act (EMTALA)[4]," "HIPAA[5]," "the Rehabilitation Act of 1973[6]," "the HITECH ACT[7]" or "Section 1981."[8]

---

[4]While the EMTALA's civil enforcement provision expressly permits a private cause of action against a participating hospital, it does not expressly permit a private cause of action against an individual physician. *See* 42 U.S.C. § 1395dd(d)(2)(A) ("Any individual who suffers personal harm as a direct result of a participating hospital's violation of a requirement of this section may, in a civil action *against the participating hospital*, obtain those damages available for personal injury under the law of the State in which the hospital is located, and such equitable relief as is appropriate") (emphasis added); *see also*, *King v. Ahrens,* 16 F.3d 265, 270-71 (8th Cir. 1994). Therefore, plaintiff cannot bring a private claim against defendants.

[5]HIPAA does not create a private right of action. *Trone Health Servs., Inc. v. Express Scripts Holding Co.,* 974 F.3d 845, 851 (8th Cir. 2020) (quoting *Dodd v. Jones*, 623 F.3d 563, 569 (8th Cir. 2010)).

[6]Section 504 of the Rehabilitation Act, 29 U.S.C. §§ 701–796, prohibits any "program or activity receiving Federal financial assistance" from discriminating on the basis of disability. "To establish a prime facie case of disability discrimination under Section 504, the plaintiff must prove: (1) [he] is a qualified individual with a disability; (2) [he] was denied the benefits of a program or activity of a public entity receiving federal funds; and (3) [he] was discriminated against based on [his] disability." *M.P. ex rel. K. & D.P. v. Indep. Sch. Dist. No. 721, New Prague, Minn.,* 439 F.3d 865, 867 (8th Cir. 2006). Plaintiff has not alleged he is a qualified individual with a disability, that defendants were receiving federal funds or that he was denied benefits on the basis of his disability.

[7]The Health Information Technology for Economic and Clinical Health Act was passed by Congress as part of the American Recovery and Reinvestment Act (ARRA) of 2009. Pub. L. No. 111-5, Title XIII, 123 Stat. 115, 226 (2009). ARRA contains incentives related to health care information technology in general (e.g. creation of a national health care infrastructure) and contains specific incentives designed to accelerate the adoption of electronic health record (EHR) systems among providers. The HITECH Act also widens the scope of privacy and security protections available under HIPAA; it increases the potential legal liability for non-compliance; and it provides for more enforcement. Like HIPAA, the HITECH Act does not allow an individual to bring a cause of action against a provider. However, it does allow a state attorney general to bring an action on behalf of his or her residents. *See, e.g., Ciox Health, LLC v. Azar*, 435 F.Supp.3d 30, 39-41 (D.C. D.C. 2020); *Rios v. Partners in Primary Care, P.A.*, No. SA-18-CV-00538-FB, 2019 WL 668509 (W.D. TX Feb. 15, 2019). Thus, plaintiff cannot bring a case under the HITECH Act in this action.

[8]Section 1981 provides that all persons within the jurisdiction of the United States shall have "the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens." 42 U.S.C. § 1981(a). To establish a prima facie case for race discrimination under § 1981, "a plaintiff must show (1) he is a member of a protected class, (2) he met his employer's legitimate expectations, (3) he suffered an adverse employment action, and (4) the circumstances gave rise to an inference of discrimination (for example, similarly situated employees outside the protected class were treated differently)." *Young v. Builders Steel Co.*, 754 F .3d 573, 577 (8th Cir. 2014). Plaintiff has not alleged he was a member of a protected class or that he was employed by defendant Compass.

Plaintiff has not only failed to set forth the causes of action under each of these laws, but he has also failed to outline how each of these laws is related to the facts alleged in his complaint.[9] Plaintiff cannot simply provide a laundry list of federal laws in his complaint and without more, state that these laws form the bases for this Court's jurisdiction.[10]

## Conclusion

Nothing in plaintiff's complaint indicates that the Court has jurisdiction over this matter. The instant action does not arise under the Constitution, laws, or treaties of the United States, so federal question jurisdiction pursuant to 28 U.S.C. § 1331 is inapplicable, and diversity jurisdiction under 28 U.S.C. § 1332 does not exist here because plaintiff defendants are citizens of the same state. As a result, plaintiff will be required to show cause, within twenty-one (21) days of the date of this Memorandum and Order why this action should not be dismissed for lack of jurisdiction.

## Motion for Appointment of Counsel

Plaintiff has also filed a motion to appoint counsel. A self-represented litigant has "neither a constitutional nor a statutory right to appointed counsel in civil cases." *Patterson v. Kelley*, 902 F.3d 845, 850 (8th Cir. 2018) (citing *Phillips v. Jasper Cty. Jail*, 437 F.3d 791, 794 (8th Cir. 2006)). A district court may appoint counsel in a civil case if it is "convinced that an indigent plaintiff has stated a non-frivolous claim . . . and where the nature of the litigation is such that plaintiff as well as the court will benefit from the assistance of counsel." *Id.* (citing *Johnson v. Williams,* 788 F.2d 1319, 1322 (8th Cir. 1986)). When determining the propriety of appointing counsel, a court considers factors such as the factual complexity of the issues, the litigant's ability

---

[10]The remaining "violations" listed by plaintiff are state causes of action which cannot form the basis for this Court's federal question jurisdiction.

to investigate the facts and present his claims, the existence of conflicting testimony, and the complexity of the legal arguments. *Id.* (citing *Phillips*, 437 F.3d at 794).

In this case, there is no indication that plaintiff is incapable of representing himself, and nothing in the instant motion or in the record before the Court indicates that the factual or legal issues are sufficiently complex to justify the appointment of counsel. Moreover, the defendant has not been served with process and discovery has not begun, so there is no conflicting testimony. However, recognizing that circumstances may change, the Court will deny the motion for appointment of counsel without prejudice, and will entertain future such motions, if appropriate, as the case progresses.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion for leave to proceed *in forma pauperis* [ECF No. 2] is **GRANTED** and the filing fee is waived. *See* 28 U.S.C. § 1915(a)(1).

**IT IS FURTHER ORDERED** that plaintiff is required to show cause within twenty-one days of the date of this Memorandum and Order why this action should not be dismissed for lack of subject matter jurisdiction.

**IT IS FURTHER ORDERED** that plaintiff's motion for appointment of counsel [ECF No. 3] is **DENIED at this time**.

Dated this 15th day of March, 2022.

　　　　　　　　　　　　　　　　　　　　*Audrey G. Fleissig*
　　　　　　　　　　　　　　　　　　　　AUDREY G. FLEISSIG
　　　　　　　　　　　　　　　　　　　　UNITED STATES DISTRICT JUDGE